**WO**                                                                        SKC

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Mario Alberto Hernandez, | No. CV-23-01400-PHX-MTL (ESW) |
| Plaintiff, | |
| v. | **AMENDED ORDER** |
| Chandler, City of, et al., | |
| Defendants. | |

Plaintiff Mario Alberto Hernandez brought this pro se civil rights action in the Maricopa County Superior Court pursuant to 42 U.S.C. § 1983 and Arizona law, and Defendants City of Chandler, City of Chandler Municipal Court, and City of Chandler Police Department removed it to this Court and moved to dismiss the Complaint for failure to state claim. (Docs. 1, 4.)  The Court found that removal was warranted, granted the Motion to Dismiss Plaintiff's federal claims, declined supplemental jurisdiction over Plaintiff's state law claims, and gave Plaintiff 30 days to file an amended complaint. (Doc. 17.)  Plaintiff filed a First Amended Complaint ("FAC") (Doc. 18), which the City of Chandler moved to dismiss (Doc. 20), and the Court again dismissed the federal claims without prejudice for failure to state a claim and declined supplemental jurisdiction over the state law claims.  (Doc. 30.)

Plaintiff has since filed a Second Amended Complaint ("SAC"), in which he names the City of Chandler, several individually named City of Chandler judicial officers and

1    City of Chandler Police Department ("CPD") officers and their spouses,[1] and the State of
2    Arizona.  (Doc. 31.)  Defendant City of Chandler ("the City") has filed a Motion to Dismiss
3    for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure
4    (Doc. 38), and Defendant State of Arizona ("the State") has filed a Motion to Dismiss for
5    lack of subject matter jurisdiction and for failure to state a claim pursuant to Rules 12(b)(1)
6    and 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 41.)  Both Motions are fully
7    briefed.  (Doc. 40, 44, 45, 49.)  Also before the Court is Plaintiff's Ex Parte Preliminary
8    Injunction Against Defendant State of Arizona ("Motion for Preliminary Injunction")
9    (Doc. 37), which is also fully briefed.  (Docs. 47, 48.)

10        The Court will grant the Motions to Dismiss and deny Plaintiff's Motion for
11   Preliminary Injunction.

12   **I.      Legal Standards**

13        **A.      Rule 12(b)(1)**

14        Rule 12(b)(1) allows a defendant to raise the defense that the court lacks jurisdiction
15   over the subject matter of an entire action or of specific claims alleged in the action.  When
16   considering a motion to dismiss for lack of subject matter jurisdiction, the Court takes as
17   true the material facts alleged in the complaint.  *See Whisnant v. United States*, 400 F.3d
18   1177, 1179 (9th Cir. 2005).  But the Court is not restricted to the face of the pleadings; it
19   may consider affidavits to resolve any factual disputes concerning the existence of
20   jurisdiction.  *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988) (citation
21   omitted); *see Biotics Research Corp. v. Heckler*, 710 F.2d 1375, 1379 (9th Cir. 1983)
22   (consideration of material outside the pleadings did not convert a Rule 12(b)(1) motion into
23   one for summary judgment).  If a defendant files a Rule 12(b)(1) motion attacking the
24   existence of subject-matter jurisdiction, the plaintiff bears the burden of proving that
25   jurisdiction exists.  *Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp.*, 594 F.2d 730, 733
26   (9th Cir. 1979).

27   . . . .

28   _____

[1] The individually named Defendants have not yet been served.

**B.**     **Rule 12(b)(6)**

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990)).  In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what . . . the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted).  To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

As a general rule, when deciding a Rule 12(b)(6) motion, the court looks only to the face of the complaint and documents attached thereto. *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  A court may, however, consider documents incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment. *Id.*

. . . .

## II.    The SAC

Plaintiff's claims in this action arise from Defendants' alleged violations of Plaintiff's federal and state constitutional rights in connection with an order of protection Plaintiff's wife, Mia Ariel Ingram, sought and obtained against Plaintiff in the Chandler Municipal Court.  Plaintiff's 70-page SAC contains more than 400 paragraphs, many of which randomly repeat the same or similar factual allegations and/or contain only conclusory language, such as alleging that Defendants showed "callous disregard for Plaintiff's rights," or their conduct "illuminated the erosion of fundamental principles of justice and due process," *see, e.g.*, FAC ¶¶ 69, 70, instead of providing a "short and plain statement" of what each Defendant allegedly did to violate Plaintiff's rights, as is required "to show that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  This vagueness and the unwieldy and repetitive nature of the pleadings make it difficult to parse out the factual bases of Plaintiff's claims.[2]

Eliminating the repeated allegations and wholly conclusory statements, the factual bases of Plaintiff's claims can be condensed into the following sequence of alleged events and actions: (1) Judicial Officer Monica K. Lindstrom's[3] alleged *ex parte* grant of an order of protection against Plaintiff; (2) Defendant CPD Officer Ramer's and another officer's alleged conduct on June 30, 2022, when these officers allegedly served the *ex parte* order

---

[2] The Court is mindful that where, as here, Plaintiff is proceeding pro se, it must liberally construe the pleadings in his favor.  *Capp v. Cnty. of San Diego*, 940 F.3d 1046, 1052 (9th Cir. 2019) ("We have emphasized that pro se pleadings, such as the FAC in this case, are to be liberally construed on a motion to dismiss").  Nonetheless, Plaintiff should be aware that he is still required to adhere to the federal and local rules of civil procedure, included Rule 8 pleading standards.

[3] It is not clear from the SAC whether Plaintiff intended to name Lindstrom as a Defendant in this action.  Although Plaintiff refers to her as a "Defendant" in some of his factual allegations, he did not name her in the caption of the SAC or identify her as one of the parties in the "parties" section of the SAC.  In any case, it is immaterial at this juncture whether Plaintiff intended to state a claim against Lindstrom because none of the individually named Defendants have been served, and the Motions before the Court pertain only to Plaintiff's claims against the City and State.

of protection on Plaintiff at his Chandler residence, unlawfully searched his home, and permitted his home to be "robbed" in the presence of Plaintiff's son; (3) the City's alleged policy at the time of Plaintiff's July 11, 2022 hearing that hearings regarding orders of protection must be held remotely, despite the Arizona Supreme Court's recommendation that such hearings be held in person; (4) the Chandler Municipal Court's July 11, 2022 decisions to keep the order of protection against Plaintiff in place; (5) the Chandler Municipal Court's alleged failure to permit Plaintiff to cross-examine his wife; (6) CPD Defendant Officers' alleged failures to intervene, write a report, or investigate an additional, September 3, 2022 "robbery" of Plaintiff's residence, wherein the officers stood by while Defendant Antoinette Ingram[4] took property from the residence in the presence of Plaintiff's son and placed items in a Penske moving truck; (6) Officer Ramer's alleged September 10, 2022 phone calls to Plaintiff in which Ramer asked Plaintiff questions about Plaintiff's whereabouts without a lawyer present and without informing Plaintiff of his rights; (7) Officer Ramer's alleged arrest of Plaintiff and unlawful search of Plaintiff's residence after Plaintiff moved back into the residence on September 10, 2022, even though Plaintiff's appeal of the order of protection against him was still pending and Plaintiff had been informed by the property owner that he could move back in because his wife had moved out; (7) unknown Defendants' alleged questioning of Plaintiff on September 10 and

---

[4] It is unclear from the allegations in the SAC who Defendant Antoinette Ingram is or what her role was.  In the section of the SAC listing the parties, Plaintiff identifies Defendant Ingram only as "a citizen of the United States of America, acting under the laws of the State of Arizona" and states she is being "sued in her individual capacity as a citizen of Maricopa County."  (SAC ¶¶ 13−14.)  Plaintiff identifies "Mia Ariel Ingram" as his wife, from whom he is separated, and he confusingly refers to both Defendant Ingram and his wife Mia Ingram at times as "Ms. Ingram." (*See, e.g.*, *id.* ¶¶ 13, 57, 87.)  Elsewhere in the SAC, Plaintiff identifies Defendant "Antoinette Ingram" as an individual "committing the robbery" of Plaintiff's property (*id.* ¶ 251), but this and other allegations about Defendant Ingram and the alleged robbery are disjointed and do not clarify what, if any, relationship Defendant Ingram has to Plaintiff or his wife Mia Ingram or if, perhaps, Antoinette Ingram and Mia Ingram are one and the same person.

November 11, 2022 without informing him of his rights;[5] and (8) the City and State's alleged September 10 and November 11, 2022 decisions to criminally charge and prosecute Plaintiff for violating the order of protection.

In Counts One through Seven, Plaintiff asserts federal claims against both the City and the State, and he variously includes some or all of the individually named Defendants.[6]

**III.   The City's Motion to Dismiss**

**A.   Section 1983 Legal Standard**

To state a claim under § 1983, a plaintiff must allege facts supporting that (1) the conduct about which he complains was committed by a person acting under the color of state law and (2) the conduct deprived him of a federal constitutional or statutory right. *Wood v. Ostrander*, 879 F.2d 583, 587 (9th Cir. 1989). In addition, a plaintiff must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant. *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).

A municipality may not be sued under § 1983 solely because an injury was inflicted by one of its employees or agents. *Long v. Cnty of Los Angeles*, 442 F.3d 1178, 1185 (9th

---

[5] Plaintiff alleges he was questioned on these dates "without be[ing] advised of his rights," but he does not identify who questioned him or allege any facts about the nature of the questioning. (SAC ¶¶ 123, 136.)

[6] Following these Counts, the SAC contains a section labelled "State Law Claims," which contains eight additional counts under Arizona law. (SAC at 54−69.) Plaintiff expressly states in the SAC that he "excludes" these claims from the instant action because the Court previously declined supplemental jurisdiction over them, and Plaintiff intends to move to remand them to state court. (*Id.* ¶¶ 232−33.) Because these claims are not part of this action or at issue in the currently pending Motions, the Court will not address them in this Order. Moreover, the Court already denied Plaintiff's Motion to Remand his state law claims on the ground that it previously declined supplemental jurisdiction over these claims and dismissed them from this action, and Plaintiff did not reassert them in his SAC. (Doc. 35.) In that same Order, the Court informed Plaintiff that, if he wished to reassert his state law claims in this action, he must do so by seeking leave to file a third amended complaint in accordance with Rule 15 of the Federal Rules of Civil Procedure and Rule 15.1 of the Local Rules of Civil Procedure, but Plaintiff did not seek such leave. (*Id.* at 2.)

Cir. 2006).  Rather, the municipality is liable only when the execution of its policy or custom inflicts the constitutional injury.  *Id.*; *see Miranda v. City of Cornelius*, 429 F.3d 858, 868 (9th Cir. 2005); *Leatherman v. Tarrant Cnty. Narcotics Intel. and Coordination Unit*, 507 U.S. 163, 166 (1993); *Monell v. New York Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978) ("[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983"). Therefore, a § 1983 claim against a municipal defendant "cannot succeed as a matter of law" unless a plaintiff: (1) contends that the municipal defendant maintains a policy or custom pertinent to the plaintiff's alleged injury; and (2) explains how such policy or custom caused the plaintiff's injury.  *Sadoski v. Mosley*, 435 F.3d 1076, 1080 (9th Cir. 2006) (affirming dismissal of a municipal defendant pursuant to Fed. R. Civ. P. 12(b)(6)).

**B.**    **Discussion**

**1.**    **Count One: Procedural Due Process**

In Count One, Plaintiff alleges that the City violated his procedural due process rights at his July 11, 2022, order-of-protection hearing by holding that hearing remotely and not permitting Plaintiff to cross-examine his wife.  (SAC ¶¶ 149–50.)  Plaintiff also alleges that the City, acting through the Chandler Municipal Court, "recklessly charged Plaintiff on September 10th, 2022, and November 11th 2022" with failure to comply with court orders and "knowingly and willfully facilitated a hearing and criminal charges that systematically undermined Plaintiff's due process rights." (*Id.* ¶¶ 136, 147.)

The City argues that, to the extent Plaintiff alleges it has a policy of holding order-of-protection hearings remotely, he fails to state a claim based on this alleged policy because he fails to allege any facts showing he suffered a due process violation based on the remote nature of his July 11, 2022, hearing.  (Doc. 38 at 8.)  The City relies on *Mathews v. Eldridge* for the proposition that due process requires only "the opportunity to be heard at a meaningful time and in a meaningful manner," 424 U.S. 319, 333, (1976) (internal quotation marks and citations omitted), and it argues that Plaintiff did not allege that the

1    remote nature of the proceeding prevented him from offering testimony, presenting

2    evidence, or calling witnesses on his own behalf.  (*Id.* at 8−9.)  The City also argues that

3    Plaintiff did not allege he suffered any injury from the hearing being conducted remotely

4    rather than in person, absent which he cannot state a claim.  (*Id.* at 9.)

5         In his Response, Plaintiff argues that the City's remote hearing procedures

6    "substantially hindered [his] capacity to mount a thorough defense," but he does not point

7    to any allegations in the SAC from which to plausibly infer that he was not afforded a

8    meaningful right to be heard.  (Doc. 40 at 3−4.)  Absent any allegations showing that the

9    remote nature of the hearing prevented Plaintiff from presenting a meaningful defense,

10   Plaintiff fails to state a due process claim based on the City's alleged policy of requiring

11   order-of-protection hearings to be held remotely.

12        The parties do not address Plaintiff's additional allegations that Plaintiff was unable

13   to cross-examine his wife at this hearing, but even if Plaintiff could state a due process

14   claim on this basis,[7] he fails to do so.  First, Plaintiff did not allege that he ever requested

15   to cross-examine any witnesses during the hearing and was denied.  He also did not allege

16   any non-conclusory facts about the hearing from which to infer he suffered harm due to his

17   alleged inability to cross-examine his wife.  Finally, Plaintiff fails to allege any facts from

18   which to infer that the City had an official policy or regular practice of denying order-of-

19   protection defendants the right to cross-examine witnesses, absent which he cannot hold

20   the City liable for any alleged violation.  *Long*, 442 F.3d at 1185.

21        Plaintiff's remaining allegations that the City recklessly charged Plaintiff and

22   "knowingly and willfully facilitated a hearing and criminal charges that systematically

23   undermined Plaintiff's due process rights," also fail to state a claim against the City.  In

24   addition to being wholly conclusory, these allegations appear to be based solely on the

25   alleged actions of CPD officers or judicial officials, not on any policies or regular practices

26   _____

27        [7] *See, e.g., Goldberg v. Kelly*, 397 U.S. 254, 269 (1970) ("In almost every setting

28   where important decisions turn on questions of fact, due process requires an opportunity to
     confront and cross-examine adverse witnesses.").

of the City for which the City can be held liable.  *See Monell*,  436 U.S. at 694 (1978) (a municipality "cannot be held liable solely because it employs a tortfeasor"); *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 831 (1985) ("To infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.").  The Court will dismiss Count One against the City for failure to state a claim.

### 2.    Count Two: Deliberately Indifferent Policies and Training

In Count Two, Plaintiff asserts a Fourteenth Amendment due process claim against the City based on its allegedly deliberately indifferent policies, practices, customs, training, and supervision.  The City argues that Plaintiff fails to state a claim because his allegations are "wholly vague and mere conclusory statements that fail to identify with specificity what the City['s] policies are or how Plaintiff's injuries derived from these policies," and Plaintiff "fails to allege sufficient facts to support any theory of municipal liability." (Doc. 38 at 10, 11.)  The Court agrees.

The only official city policy Plaintiff identifies in the SAC is the City's alleged policy in effect at the time of his order-of-protection hearing of holding such hearings remotely instead of in person.  (SAC ¶ 176.)  As already discussed, Plaintiff fails to allege any facts showing he suffered a constitutional violation due to the remote nature of that hearing, and he therefore fails to state a claim based on this alleged policy.

Plaintiff also fails to state a claim based on any alleged unconstitutional customs or practices of the City.  Plaintiff instead provides only "formulaic recitation[s] of the elements of a cause of action," which the Supreme Court has found "will not do" to state a claim.  *Twombly*, 550 U.S. at 555.  He alleges, for example, that the City "developed and maintained policies, procedures, customs, and/or practices exhibiting deliberate indifference to the constitutional rights of citizens, which were moving forces behind and proximately caused the violations of Plaintiff's constitutional and federal rights as set forth herein and in the other claims, resulted from a conscious or deliberate choice to follow a

course of action among various available alternatives." (SAC ¶ 175.) In a similar vein, he alleges that the City "has created and tolerated an atmosphere of lawlessness, having developed and maintained long-standing, department-wide customs, law enforcement-related policies, procedures, customs, practices, and/or failed to properly train and/or supervise its officers and employees in a manner amounting to deliberate indifference to the constitutional rights of Plaintiff and of the public." (*Id.* ¶ 178.) Such allegations, devoid of any underlying facts, fail to meet federal pleading standards, which equally apply in the *Monell* context. *See, e.g., A.E. ex rel. Hernandez v. Cnty. of Tulare*, 666 F.3d 631, 637 (9th Cir. 2012) ("[A]llegations in a complaint . . . may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively . . . [and] must plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation. This standard applies to *Monell* claims . . . .") (citations omitted); *Brown v. Cnty. of Mariposa*, No. 1:18-CV-01541-LJO-SAB, 2019 WL 4956142 *4 (E.D. Cal. Oct. 8, 2019) (same).

Plaintiff also fails to state a claim against the City based on failure to train or supervise. A plaintiff pursuing municipal liability based on a failure to train/supervise must allege that the municipality exhibited "'deliberate indifference to the rights of persons' with whom [its] employees are likely to come into contact." *Lee v. City of Los Angeles*, 250 F.3d 668, 681 (9th Cir. 2001) (citation omitted). "'[D]eliberate indifference' is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bd. of Cnty. Comm'rs of Bryan Cnty., Okl. v. Brown*, 520 U.S. 397, 410 (1997). It may be shown if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 (1989). "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." *Connick*, 563 U.S. at 62 (quoting

*Bd. of Cnty. Comm'rs*, 520 U.S. at 409).  "Without notice that a course of training is deficient in a particular respect, decisionmakers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights." *Id.* at 62.  "A municipality's culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train." *Id.* at 61.

As above, Plaintiff merely alleges in conclusory fashion that the City "engaged in the establishment and enforcement of policies, practices, customs, training, and supervision that demonstrate deliberate indifference to the constitutional rights of individuals, thereby violating the Fourteenth Amendment."  (SAC ¶ 183.)  He does not allege any nonconclusory facts from which to infer that the City was on notice that its training and/or supervision was deficient in a particular respect, and it deliberately disregarded the known or obvious consequences of failing to train or supervise in those areas.  Absent any underlying facts about the City's training or the deficiencies thereof, Plaintiff's mere "formulaic recitation of the elements of a cause of action," *Twombly*, 550 U.S. at 555, likewise fails to state a claim based on failure to train.  The Court will dismiss Count Two against the City for failure to state a claim.

### 3.     Count Three: Unlawful Search and Seizure

In Count Three, Plaintiff asserts Fourth and Fifth Amendment unlawful search and seizure claims against the City.  These claims appear to be based on (1) Defendant Ramer's questioning of Plaintiff by phone without informing Plaintiff of his rights, (2) Defendants Ramer and Thomas' alleged search of Plaintiff's residence without a warrant, and (3) the City's alleged failure to properly train, supervise, or discipline its law enforcement officers.

The City argues that Plaintiff fails to state a claim against it because he fails to allege any facts showing the City had a policy or custom of conducting illegal searches and seizures or of conducting interrogations without *Miranda* warnings.  (Doc. 38 at 11.)  The City further argues that, to the extent these claims are based on failure to train or supervise, Plaintiff fails to allege any facts related to the City's training or supervision of its officers or any facts showing how any alleged inadequacies in that training or supervision caused

1    Plaintiff's injuries.  (*Id.* at 11-12.)  The City lastly argues that Plaintiff fails to allege

2    sufficient facts to show any underlying Fourth or Fifth Amendment violations.  (*Id.* at 12.)

3          Plaintiff's claims against the City in Count Three fail for the same reasons already

4    discussed related to his claims in Count Two based on failure to train and supervise.  Even

5    if Plaintiff could state an underlying Fourth or Fifth Amendment violation, he fails to allege

6    any nonconclusory facts connecting any alleged violations to any policies, practices, or

7    customs of the City or showing that the City failed to train its officers on the Fourth and

8    Fifth Amendment rights of citizens and was aware of and deliberately indifferent to the

9    known or obvious consequences of those failures to train.  The Court will dismiss Count

10   Three against the City for failure to state a claim.

11                **4.      Count Four: Police Interrogation without *Miranda***

12         In Count Four, Plaintiff asserts a Fifth Amendment claim based on Defendant

13   Officer Cohen's alleged phone interrogations of Plaintiff on September 10, 2022.[8]  This

14   claim suffers from the same deficiencies discussed above.  Once again, even if Plaintiff

15   could state a claim based on Officer Cohen's alleged interrogation of Plaintiff without

16   *Miranda* warnings, Plaintiff fails to allege any nonconclusory facts from which to infer that

17   the alleged violations were due to any city policies, customs, or alleged failures to train.

18   The Court will dismiss Count Three against the City for failure to state a claim.

19                **5.      Count Five: Failure to Intervene**

20         In Count Five, Plaintiff asserts a Fourteenth Amendment claim for failure to

21

22         [8] Plaintiff elsewhere alleged in the SAC that "he was questioned without the

23   presence of a lawyer via a phone call by Chandler City Police Defendant Officer Ramer

     and later Officer Cohen," but he did not allege any facts about the call from Cohen.  (SAC

24   ¶ 159.)  For the first time in Count Four, Plaintiff alleged that, after he returned home from

25   the criminal trial against him on November 9, 2022, he received a phone call from Cohen

     "wanting to ask questions about an incident regarding the Plaintiff's son," and even though

26   Plaintiff accused Cohen of harassment and told Cohen about his pending lawsuit against

27   the City, Cohen "refused to leave the Plaintiff alone and persisted in questioning the

     Plaintiff about violating the fraudulent Order of Protection without advising the Plaintiff

28   of his 5th amendment rights."  (*Id.* ¶¶ 226−30.)

1    intervene based on Defendant CPD Officers' alleged failures to intervene in the "ongoing
2    robbery" at Plaintiff's residence on September 3, 2022.  Plaintiff once again fails to allege
3    any nonconclusory facts from which to connect any alleged violations by the officers on
4    the scene that day to any city policies, customs, or alleged failures to train.  The Court will
5    dismiss Count Five against the City for failure to state a claim.

6                        **6.    Count Six: Defamation**

7          In Count Six, Plaintiff attempts to assert a § 1983 defamation claim against the City
8    based on various false and defamatory statements his wife allegedly made about him to
9    CPD officers or in Chandler Municipal Court proceedings.  As the legal basis for this claim,
10   Plaintiff relies on *Garrison v. State of Louisiana*, 379 U.S. 64 (1964), a Supreme Court
11   case pertaining to the constitutionality a Louisiana criminal defamation statute, which is
12   not applicable here.  (*Id.* ¶ 281.)  The City cites to *Ulrich v. City & County of San*
13   *Francisco*, 308 F.3d 968, 982 (9th Cir. 2002), in which the Ninth Circuit recognized that
14   defamation by government officials may support a Fourteenth Amendment claim for
15   deprivation of liberty if the plaintiff can meet the "stigma-plus test," and it argues that
16   Plaintiff fails to state such a claim.  (Doc. 38 at 15.)

17         Liberally construing Plaintiff's defamation claim as a Fourteenth Amendment
18   deprivation of liberty claim to which the "stigma-plus test" applies, Plaintiff must allege
19   sufficient facts to make the following showings: "the public disclosure of a stigmatizing
20   statement by the government, the accuracy of which is contested, *plus* the denial of some
21   more tangible interest such as employment, or the alteration of a right or status recognized
22   by state law."  *Ulrich*, 308 F.3d at 982 (emphasis in original).

23         The City argues that Plaintiff fails to meet this test because he does not allege any
24   facts showing the City or its employees publicly disclosed a stigmatizing statement, and to
25   the extent he relies on the allegedly false and stigmatizing statements made by his wife, he
26   does not allege that his wife was acting under color of state law; nor does he allege that she
27   is an employee or agent of the City such that her statements can be attributed to it.  (Doc.
28   38 at 15.)  The City also argues that Plaintiff's allegations that these statements "led to the

deprivation of Plaintiff's property and parental rights" are too conclusory to satisfy the final prong of the stigma-plus test. (*Id.*)  And, as with Plaintiff's prior attempts to state a *Monell* claim against the City, the City argues that Plaintiff fails to allege any facts showing that the alleged defamation was due to an official policy or custom of the City. (*Id.*)

Plaintiff's attempted defamation claim against the City fails on the first prong of the stigma-plus test because Plaintiff only alleges that his wife, a non-state actor, made false and defamatory statements about him to police and in court proceedings, which were "strategically used in various contexts," to "create a false narrative" that permitted the alleged September 3, 2022 "robbery" of Plaintiff's residence and influenced court decisions in Plaintiff's divorce and parental rights proceedings. (SAC ¶¶ 284−296.) Plaintiff does not allege that any government actors publicly disclosed any false and defamatory statements. To the extent he relies on the municipal court judge's admission of allegedly false and defamatory statements in public court proceedings to satisfy this prong, Plaintiff also fails to state a claim. It was not a violation of Plaintiff's due process rights in a judicial proceeding for the judge to permit Plaintiff's wife to testify and enter evidence against him or for the court to weigh this evidence when determining Plaintiff's property, marital, and parental rights under state law. *Carey v. Piphus*, 435 U.S. 247, 263 (1978) ("injury caused by a justified deprivation . . . is not properly compensable under § 1983"). The Court will dismiss Count Six against the City for failure to state a claim.

### 7.  Count Seven: Negligent Infliction of Emotional Distress

In Count Seven, Plaintiff attempts to assert a negligent infliction of emotional distress ("NIED") claim against all Defendants under § 1983. He alleges that "Defendants," as a whole, "engaged in a pattern and practice of conduct that they knew or should have known would cause severe emotional distress." (SAC ¶ 304). In addition to relying generally on all prior allegations in the SAC, Plaintiff makes additional, solely conclusory allegations, such as that "Defendants," as a group, "conspire[ed] to undermine the legal process and deny Plaintiff due process rights," and "engag[ed] in a pro-women agenda aimed at destroying the role of men in families and communities." (SAC ¶¶ 312, 313.)

"[W]here injury such as mental and emotional distress is caused by [a] constitutional violation, that injury is compensable under section 1983." *Anderson v. Cent. Point Sch. Dist. No. 6*, 746 F.2d 505, 508 (9th Cir. 1984) (citing *Carey*, 435 U.S. at 263).  As an initial matter, Plaintiff does not identify a specific constitutional violation underlying his NIED claim.  Liberally construed, this claim arises, if at all, from the alleged constitutional violations of unspecified "Defendants" in the previous Counts.  As discussed, though, Plaintiff's allegations in the SAC are too conclusory to show the City had a policy or custom that caused any violations of his constitutional rights.  The allegations in Count Seven are equally conclusory and likewise fail to make this showing.  The Court will dismiss Count Seven against the City for failure to state a claim.

## IV.     The State's Motion to Dismiss

Plaintiff includes the State as a Defendant in all the Counts already discussed, except for Count Four, in which he alleges a Fifth Amendment *Miranda* violation against only the City and Defendant Officer Cohen.  Plaintiff alleges that the State is liable for the various alleged violations of his constitutional rights on the ground that it is allegedly responsible for all "policing activities" within the State; it allegedly established or delegated judicial authority to the City of Chandler Municipal Court, for which it allegedly acts as a "parent judiciary"; and it is allegedly the policymaker for the City.  (SAC ¶¶ 45−49, 162, 172.)

The State moves to dismiss all claims against it on the ground that it has Eleventh Amendment immunity to suits against it in federal court, which it has not waived; it is not a "person" or a municipality that can be sued as a "person" under § 1983; and there is no vicarious liability under § 1983 whereby Plaintiff can hold the State liable for any of the alleged constitutional violations.  (Doc. 41 at 6−9.)  The State also argues that the claims against it should be dismissed with prejudice because amendment would be futile.  (*Id.* at 8, 9.)

Under the Eleventh Amendment to the Constitution of the United States, neither a state nor a state agency may not be sued in federal court without the state's consent. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Taylor v. List*, 880

- 15 -

1   F.2d 1040, 1045 (9th Cir. 1989) (applying Eleventh Amendment immunity to a plaintiff's
2   § 1983 claims against a state agency).  The Eleventh Amendment serves as a "constitutional
3   bar against hearing even *federal* claims that otherwise would be within the jurisdiction of
4   the federal courts.  *Pennhurst*, 465 U.S. at 89 (emphasis in original).  A state's Eleventh
5   Amendment immunity from suit "is not absolute" because "Congress may authorize such
6   a suit in the exercise of its power to enforce the Fourteenth Amendment," which post-dates
7   the Eleventh Amendment, and "a State may waive its sovereign immunity by consenting
8   to suit."  *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666,
9   670 (1999).  Although a state's waiver must be unambiguous, an "express waiver" is not
10  always required.  *Hill v. Blind Indus. & Servs. of Maryland*, 179 F.3d 754, 758−59 (9th
11  Cir.), *opinion amended on denial of reh'g,* 201 F.3d 1186 (9th Cir. 1999).  "[A] waiver of
12  Eleventh Amendment immunity has been found when the state's conduct during the
13  litigation clearly manifests acceptance of the federal court's jurisdiction or is otherwise
14  incompatible with an assertion of Eleventh Amendment immunity."  *Id.*  "[A] State
15  defendant that removes a case to federal court waives its immunity from suit on all federal-
16  law claims in the case."  *Walden v. Nevada*, 945 F.3d 1088, 1094 (9th Cir. 2019).

17         Here, Plaintiff added the State as a Defendant only after the City and other City
18  entities removed this action to federal court, so the State did not waive its Eleventh
19  Amendment immunity by consenting to federal court jurisdiction.  The State has also not
20  expressly waived its immunity or engaged in any other conduct that manifests an
21  unambiguous acceptance of this Court's jurisdiction.  Instead, the State expressly invoked
22  its Eleventh Amendment immunity at the earliest possible juncture by moving to dismiss
23  Plaintiff's claims against it in the SAC, thereby providing fair notice that it would not
24  submit to being sued in this action.  *See Aholelei v. Dep't of Pub. Safety*, 488 F.3d 1144,
25  1147 (9th Cir. 2007) (internal citations and quotation marks omitted) ("Eleventh
26  Amendment immunity is an affirmative defense that must be raised early in the proceedings
27  to provide fair warning to the plaintiff").

28         In his Response, Plaintiff argues only that Eleventh Amendment immunity is not

absolute, and he cites to recognized exceptions in cases involving takings or tax refunds, neither of which is applicable here.  (Doc. 45 at 6.)  Plaintiff requests that the Court reject the State's Eleventh Amendment Immunity defense on this basis and allow his claims against the State to proceed.  (*Id.* at 7.)  As set forth above, the Court has no authority to ignore the State's constitutional immunity to suit absent a clear waiver of that immunity or an unambiguous act of Congress, which is not present here.  The Court will dismiss Plaintiff's claims against the State for lack of subject matter jurisdiction.

**V.     Plaintiff's Motion for Preliminary Injunction**

To obtain a preliminary injunction, the moving party must show "that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  The moving party has the burden of proof on each element of the test.  *Envtl. Council of Sacramento v. Slater*, 184 F. Supp. 2d 1016, 1027 (E.D. Cal. 2000).

Plaintiff seeks a preliminary injunction against the State and non-party State Attorney General Kris Mayes, enjoining the State and Mayes "from enforcing judgments, or criminally charging Plaintiff . . . until all claims are properly adjudicated" in Plaintiff's appeal of two state court judgments against him.  (Doc. 37 at 4−5.)

Plaintiff's Motion fails for several reasons.  First, Plaintiff makes no showing on any of the *Winter* factors.  Although he provides headings for two of these factors: "likelihood of success on the merits," and "irreparable harm," he merely refers to his allegations in the SAC as a whole to argue he is likely to succeed on the merits, and he only summarily lists generic harms, such as "deprivation of property, invasion of privacy, financial instability, and ongoing threats to [his] safety and well-being," without specifying any current harms he faces absent immediate court intervention.  (Doc. 37 at 3.)  Such conclusory assertions fail to meet Plaintiff's burden of proof on either prong.  Moreover, because the Court must dismiss Plaintiff's claims against the State for lack of subject-matter jurisdiction, Plaintiff cannot succeed on the merits of these claims; nor does the

Court have jurisdiction to order the State to provide any relief. *See Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1985) ("A federal court may issue an injunction if it has personal jurisdiction over the parties and subject matter jurisdiction over the claim."); *see also Zenith Radio Corp. v. Hazeltine Research, Inc.*, 395 U.S. 100, 110 (1969).

Finally, as the State argues, federal courts are barred from ordering relief related to a plaintiff's purported injuries from a state court judgment under both the *Rooker-Feldman* doctrine and the Anti-Injunction Act, 28 U.S.C.A. § 2283. (Doc. 47 at 2−3.) The *Rooker-Feldman* doctrine bars subject matter jurisdiction where, as here, "a federal plaintiff asserts as a legal wrong an allegedly erroneous decision by a state court[] and seeks relief from a state court judgment based on that decision." *Noel v. Hall*, 341 F.3d 1148, 1156 (9th Cir.2003). Additionally, under the Anti-Injunction Act, the Court "may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its [own] judgments." 28 U.S.C.A. § 2283. This mandate "extends not only to injunctions affecting pending proceedings, but also to injunctions against the execution or enforcement of state judgments." *Henrichs v. Valley View Dev.*, 474 F.3d 609, 616 (9th Cir. 2007). Put simply, "[a]n injunction may not be used to evade the dictates of the Act if the injunction effectively blocks a state court judgment." *Id.* Based on these mandates, the Court will summarily deny Plaintiff's Motion for Preliminary Injunction.

**VI. Remaining Claims**

With the dismissal of the claims against both the City and State, Plaintiff's only remaining claims in this action are his § 1983 claims against the individually named Defendants. The Court previously ordered Plaintiff to show cause by April 29, 2024, why this action should not be dismissed as to those Defendants for failure to serve. (Doc. 56.) On May 8, 2024, the Court discharged Plaintiff of that obligation after Plaintiff filed a "Motion for Issuance of Summonses and Request for Rule 16 Case Management Conference" (Doc. 57), which the Court construed as a response to the Order to Show Cause. (Doc. 58.) In the same Order, the Court lifted the stay on discovery in effect at that

time to the extent that it permitted Plaintiff limited discovery to discover the service addresses for the unserved Defendants, and it gave Plaintiff 60 days from the date of that Order to obtain waivers of service from those Defendants or complete service on them. (*Id.* at 2.) Plaintiff therefore has until July 8, 2024, to serve these Defendants or his claims against them may also be dismissed.

**IT IS ORDERED:**

(1)     The reference to the Magistrate Judge is **withdrawn** as to Defendants City of Chandler and State of Arizona's Motions to Dismiss (Doc. 38, 41) and Plaintiff's Motion for Preliminary Injunction (Doc. 37).

(2)     The City of Chandler's Motion to Dismiss (Doc. 38) is **granted**, and Plaintiff's claims against the City of Chandler are **dismissed** without prejudice pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim.

(3)     The State of Arizona's Motion to Dismiss (Doc. 41) is **granted**, and Plaintiff's claims against the State of Arizona are **dismissed** without prejudice pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

(4)     Plaintiff's Motion for Preliminary Injunction (Doc. 37) is **denied**.

(5)     Plaintiff's remaining claims in this action are his § 1983 claims against the individually named Defendants.  Plaintiff has until July 8, 2024, to serve these Defendants or his claims against them may also be dismissed.

Dated this 5th day of June, 2024.

Michael T. Liburdi
United States District Judge