1    **WO**                                                                    SKC

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Mario Alberto Hernandez,                    No. CV-23-01400-PHX-SHD (ESW)

10                          Plaintiff,

11   v.                                          **ORDER**

12   Chandler, City of, et al.,

13                          Defendants.

14

15           Plaintiff Mario Alberto Hernandez brought this pro se civil rights action pursuant to

16   42 U.S.C. § 1983 and Arizona law based on events that allegedly took place pursuant to an

17   order of protection Hernandez's wife, Mia Ariel Ingram, sought and obtained against him

18   in the Chandler Municipal Court.  Defendants Chandler Deputy City Prosecutor Rosemary

19   Rosales and Chandler Police Officers Billie Etringham, Heath Hernandez, Joshua Cohen,

20   Sal Haro Trujillo, Jacob Ramer, Joseph Phelps, and Zachary Thomas (the "Individual

21   Chandler Defendants") have filed a Motion to Dismiss for failure to state a claim pursuant

22   to Rule 12(b)(6) of the Federal Rules of Civil Procedure.  (Doc. 65.)  Hernandez was

23   informed of his rights and obligations to respond (Doc. 67), and he opposes the Motion.

24   (Doc. 72.)  The Motion is fully briefed.  (Doc. 74.)  Hernandez's Motion for Leave to File

25   Third Amended Complaint, supported by his incomplete draft/outline of a Proposed Third

26   Amended Complaint, is also pending.  (Doc. 86; Doc. 86-1.)

27           The Court will grant the Individual Chandler Defendants' Motion to Dismiss and

28   will grant the Motion to Amend, in part.

1    **I.    Background**

2        Hernandez initiated this action in the Maricopa County Superior Court against the

3    City of Chandler ("the City"), the Chandler Municipal Court, and the Chandler Police

4    Department (collectively, "the Municipal Defendants").    The Municipal Defendants

5    removed the action to this Court and paid the filing fee.  (Doc. 1.)  The Court found that

6    removal was warranted under 28 U.S.C. § 1441(a) because Hernandez alleged

7    constitutional violations, and federal courts have original jurisdiction "of all civil actions

8    arising under the Constitution, laws, or treaties of the United States."  (Doc. 17 at 2.)

9        The Municipal Defendants also moved to dismiss the Complaint for failure to state

10   a claim.  (Doc. 4.)  The Court granted the Motion to Dismiss, dismissed the Complaint in

11   its entirety, and gave Hernandez 30 days to file an amended complaint.  (Doc. 17.) The

12   Court did not substantively address the state law claims, noting that under 28 U.S.C.

13   § 1367(c)(3) a federal court may decline supplemental jurisdiction over a claim if it has

14   dismissed all claims over which it has original jurisdiction.  *See United Mine Workers of*

15   *Am. v. Gibbs*, 383 U.S. 715, 726 (1966) (generally, "if the federal claims are dismissed

16   before trial, . . . the state claims should be dismissed as well").[1]

17       Hernandez filed a 13-count First Amended Complaint ("the FAC") in which he

18   added the Individual Chandler Defendants, together with their spouses, whom he named as

19   Doe Defendants.  (Doc. 18.)  The FAC included claims arising under both § 1983 and state

20   law.  (*Id.*)

21       The City moved to dismiss the FAC for failure to state a claim (Doc. 20), and the

22   Court granted the City's Motion to Dismiss.  (Doc. 30.)  The Court also sua sponte

23   dismissed Hernandez's § 1983 claims against the Individual Chandler Defendants for

24   failure to state a claim, ultimately dismissing the FAC in its entirety.  (*Id.*)  As with its

25   order dismissing the original Complaint, the Court declined to substantively address

26   Hernandez's state law claims due to its dismissal of all federal claims. (*Id.* at 8, 12.)  The

27   _____

28       [1] The Court repeated this position in at least two subsequent Orders.  (*See* Doc. 30;
     Doc. 60 at 6 n.6.)

Court gave Hernandez 30 days to amend the FAC to cure the deficiencies noted in the dismissal Order.

Hernandez then filed a Second Amended Complaint ("the SAC"), which is now the operative complaint. (Doc. 31.) In the SAC, Hernandez added as Defendants the State of Arizona ("the State") and Antoinette Ingram and her spouse, identified only as John Doe Ingram. Unlike the original Complaint and the FAC, Hernandez expressly excluded his state law claims from the SAC due to the Court's orders declining supplemental jurisdiction over them. (Doc. 31 at 53 ¶¶ 332-33.) He then moved to remand the unasserted state law claims to the Maricopa County Superior Court (Doc. 32), which this Court denied, explaining that "[t]here are no state-law claims pending, and there is nothing to remand to the state court." (Doc. 35 at 2.) The Court also noted that Hernandez could not "maintain one federal action and one state action based on the same events and facts" and informed him that if he wished to "reassert his state-law claims in this case, he must do so by seeking leave to file a third amended complaint." (*Id.*)

The City and the State filed separate Motions to Dismiss the SAC for failure to state a claim, and the Court granted the Motions, dismissed these Defendants (including Count 2 in its entirety), and required Hernandez to serve the remaining unserved Defendants. (Doc. 61.) The Court declined to address the state law claims in its Order, reiterating that "these claims are not part of this action" and noting that Hernandez had not sought leave to reassert them via a third amended complaint. (*Id.* at 6 n.6.) The remaining claims in the SAC are the § 1983 against Individual Chandler Defendants, Antoinette Ingram, and the Doe Defendants.[2]

After the Motion to Dismiss the SAC was fully briefed, Hernandez moved to amend his complaint a third time to assert new claims and reassert his state law claims. (Doc. 86.)

---

[2] Hernandez has not yet served Defendant Ingram or the Doe Defendants. The Court extended the timeframe to do so to sixty days after the Court's ruling on the Individual Chandler Defendants' Motion to Dismiss, contingent upon the survival of any claims against Defendant Ingram and the Doe Defendants. (Doc. 85.)

## II.    Rule 12(b)(6) Legal Standard

Dismissal of a complaint, or any claim within it, for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121–22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)).  In determining whether a complaint states a claim under this standard, the allegations in the complaint are taken as true and the pleadings are construed in the light most favorable to the nonmovant. *Outdoor Media Group, Inc. v. City of Beaumont*, 506 F.3d 895, 900 (9th Cir. 2007).  A pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  But "[s]pecific facts are not necessary; the statement need only give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (internal quotation omitted).  To survive a motion to dismiss, a complaint must state a claim that is "plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 678.

As a general rule, when deciding a Rule 12(b)(6) motion, courts look only to the face of the complaint and documents attached thereto.  *Van Buskirk v. Cable News Network, Inc.*, 284 F.3d 977, 980 (9th Cir. 2002); *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990).  If a court considers evidence outside the pleading, it must convert the Rule 12(b)(6) motion into a Rule 56 motion for summary judgment.  *United States v. Ritchie*, 342 F.3d 903, 907–08 (9th Cir. 2003).  A court may, however, consider documents attached to the complaint or incorporated by reference in the complaint or matters of judicial notice without converting the motion to dismiss into a motion for summary judgment.  *Id.*

### III.    The Allegations in the SAC

On June 30, 2022, Defendant Officer Ramer and another police officer arrived at Hernandez's residence at a Chandler condominium complex to serve an ex parte Order of Protection (OP) on him.  (Doc. 31, SAC ¶ 56.)  At the time, Hernandez was separated from his wife, Mia Arial Ingram, and the OP gave Ms. Ingram complete occupancy of the marital rental home.  (*Id.* ¶ 57.)  When Hernandez came to the door, Defendant Ramer served the OP on him and gave him 15 minutes to remove himself from the premises.  (*Id.* ¶¶ 58, 61.)  The OP contained false allegations of abuse and "inflationary lies" of incidents that never occurred.  (*Id.* ¶ 59.)  Hernandez explained to Defendant Ramer and the other officer that everything in the OP was a lie; nonetheless, he cooperated with law enforcement, packed a few belongings, and left.  (*Id.* ¶ 62.)  Hernandez's children were also taken from him pursuant to the OP.  (*Id.* ¶ 126.)

Hernandez went to the Chandler Municipal Court to request a hearing, and a hearing was scheduled and took place on July 1, 2022.  (*Id.* ¶ 64.)  At the hearing, he stated that everything his wife said was "a complete lie," a "complete fabrication of the evidence," and the allegations against him were "completely untrue," and "extremely exaggerated."  (*Id.* ¶¶ 78−86.)  The judge nonetheless found that Ms. Ingram had met her burden and kept the OP in place.  (*Id.* ¶¶ 88−90.)  Although Hernandez disagreed with this ruling, he chose not to protest and instead filed a timely appeal.  (*Id.* ¶ 114.)

On September 3, 2022, Defendant Antoinette Ingram[3] "robbed" Hernandez's residence with Hernandez's son, Levi, present.[4]  (*Id.* ¶ 251.)   Defendant Officers

---

[3] It is unclear from the allegations in the SAC who Defendant Antoinette Ingram is or what her role was.  In the section of the SAC listing the parties, Hernandez identifies Defendant Antoinette Ingram only as "a citizen of the United States of America, acting under the laws of the State of Arizona" and states she is being "sued in her individual capacity as a citizen of Maricopa County."  (SAC ¶¶ 13−14.)  Hernandez identifies non-Defendant "Mia Ariel Ingram" as his wife, from whom he is separated, and he confusingly refers to both Defendant Ingram and his wife Mia Ingram at times as "Ms. Ingram."  (*See, e.g.*, *id*. ¶¶ 13, 57, 87.)

[4] Hernandez appears to conflate theft with robbery.  Under Arizona law, a person

Etringham, Hernandez, Trujillo, and Thomas were present during the "robbery" and spoke to Defendant Antoinette Ingram.  (*Id.*)  The officers did not intervene or take any action to prevent the unlawful taking of Hernandez's property or to investigate the premises "with an infant baby and two other children present."  (*Id.* ¶ 252.)  Bodycam evidence of the incident shows a Penske moving truck at the scene.  (*Id.* ¶ 254.)  This evidence also shows that Defendant Antoinette Ingram spoke about Hernandez and the OP and "alluded to the absence of electricity and the presence of an infant in the home."  (*Id.* ¶ 259.)  She also mentioned moving out of the residence, despite her not having the right to reside there "according to the [OP]."  (*Id.*)

Later, in a "September 17, 2022 civil stand[-]by and robbery report," Defendant Officer Trujillo acknowledged that property had been removed from the home but said it was communal property.  (*Id.* ¶ 270.)  Defendant Officers Trujillo and Hernandez informed Plaintiff Hernandez verbally and in their reports that the items taken were not solely owned by him but were communal property.  (*Id.* ¶ 272.)  Defendant Officer Hernandez made a single phone call to Defendant Ingram to inquire about the recovery of stolen property, even though video showed a Penske truck was at the scene.  (*Id.* ¶ 275.)

On September 10, 2022, a week after the September 3, 2022 "robbery," the property management company for Hernandez's condominium complex informed him that his estranged wife moved out and that he could move back in.  (*Id.* ¶ 137.)  He moved back into the "now robbed and now destroyed premises."  (*Id.* ¶ 138.)  Within a few hours of moving back in, he received two voice mails from Defendant Officer Ramer.  (*Id.* ¶ 139.)  In the first voicemail, Ramer asked to speak with Hernandez, and in the second voicemail,

---

commits theft if, without legal authority, the person "[c]ontrols property of another with the intent to deprive the other person of such property."  Ariz. Rev. Stat. § 13-1802.  By contrast, a person commits robbery by "taking any property of another from his person or immediate presence and against his will" and, in doing so, "threatens or uses force against any person with intent either to coerce surrender of property or to prevent resistance to such person taking or retaining property."  Ariz. Rev. Stat. § 13-1902.  Hernandez does not allege any facts to support the taking of property from his person or in his immediate vicinity by use of force or the threat of force.

he said he knew Hernandez was in the residence because "they" had questioned Hernandez's neighbor/maintenance man and had entered the curtilage around Hernandez's garage, opened the garage door to find Hernandez's car inside, and tried to open the interior door to Hernandez's home.  (*Id.* ¶¶ 140−41.)

Hernandez noticed a SWAT team outside, so he called the Chandler Police Department, and dispatch connected him with Defendant Ramer.  (*Id.* ¶ 142.)  Ramer interrogated Hernandez about his whereabouts and verbally harassed him, and Hernandez informed Ramer that he was in his own home minding his own business.  (*Id.* ¶ 143.)  Ramer told Hernandez this was not a negotiation and ordered him to come outside with his hands up and turn himself in.  (*Id.* ¶ 145.)  Hernandez complied and came outside and "released himself to an awaiting SWAT team with machine guns pointed to his head."  (*Id.* ¶ 145.)  He was arrested and charged with failure to comply with a court order under Arizona Revised Statutes § 13-2810A2.  (*Id.* ¶ 146.)  Hernandez explained to the arresting officers that he was innocent, an appeal was pending on the OP, and the property manager told him his estranged wife had left and he could return to the residence.  (*Id.* ¶ 146.)  Not once during these events, including during the voice messages and phone call with Ramer, was Hernandez informed of his *Miranda* rights.  (*Id.* ¶ 199.)

On November 9, 2022, Hernandez attended a court hearing regarding the criminal charge against him, and after he returned home, he received a phone call from Defendant Officer Cohen.  (*Id.* ¶ 227.)  Cohen wanted to ask him about an incident involving his son, and he accused Cohen of harassment and mentioned he had a pending lawsuit against the City.  (*Id.* ¶ 228.)  Cohen persisted in questioning him about violating the OP without advising him of his right to remain silent or right to an attorney.  (*Id.* ¶¶ 229−30.)

The criminal prosecution against Hernandez was ultimately dismissed on April 26, 2023.  (*Id.* ¶ 164.)

Hernandez asserts § 1983 claims against the Individual Chandler Defendants in Counts One, Three, Four, Five, and Seven.

## IV.    Discussion

### A.    Count One

In Count One, Hernandez asserts a Fourteenth Amendment due process claim against Defendant Ramer based on Ramer's alleged phone interrogations the arrest without probable cause on September 10, 2022.[5]  Defendants argue that these claims must be dismissed because they are duplicative of the Fourth and Fifth Amendment claims in Count Three, and Hernandez does not allege sufficient facts to state any separate Fourteenth Amendment claims.  (*Id.* at 7–8.)  Defendants rely on *Simons v. Marin County*, for the proposition that "[f]ailure to observe the requirements of the fourth amendment will not support an independent claim for a failure of due process, particularly . . . where the facts supporting each claim are identical."  682 F. Supp. 1463, 1470 (N.D. Cal. 1987).

Hernandez argues that he alleges sufficient facts to state separate procedural due process claims because his claims "regarding the lack of probable cause, absence of legal representation during questioning, and unlawful search . . . point to procedural deficiencies that collectively amount to a due process violation."  (Doc. 72 at 5.)

This argument is unpersuasive.  Any claims against Defendant Ramer based on the alleged lack of probable cause for the arrest and/or criminal prosecution arise, if at all, under the Fourth Amendment.  *See Larson v. Neimi*, 9 F.3d 1397, 1402 (9th Cir. 1993) ("The law of this circuit continues to be that in actions for the unconstitutional seizure of

---

[5] To the extent Hernandez also attempts to assert a due process claim against Defendant Ramer based on the Chandler municipal court's alleged "unjust imposition of the Order of Protection" or the alleged fraudulent criminal charges and prosecution brought against Hernandez following his arrest (Doc. 1 ¶¶ 135, 155, 162), this claim fails because he does not allege any nonconclusory facts showing Ramer was personally involved in his court cases.  A plaintiff asserting a § 1983 claim must allege that he suffered a specific injury as a result of the conduct of a particular defendant and he must allege an affirmative link between the injury and the conduct of that defendant.  *Rizzo v. Goode*, 423 U.S. 362, 371-72, 377 (1976).  "[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Iqbal*, 556 U.S. at 676.  "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights."  *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998).

persons by officials, liability will be determined under the specific standards of the Fourth Amendment rather than under the general due process standards of the Fourteenth Amendment."); *see also Thompson v. Clark*, 596 U.S. 36, 42 (2022) (the Fourth Amendment governs claims for "the wrongful initiation of charges without probable cause"); *cf. Graham v. Connor*, 490 U.S. 386, 394 (1989) (Fourth Amendment excessive force claim "must . . . be judged by reference to the specific constitutional standard which governs that right, rather than to some generalized 'excessive force' standard").  Hernandez does not allege any distinct procedural violations related to his arrest and criminal prosecution that would give rise to a due process claim separate from his Fourth and Fifth Amendment claims. *Simons* 682 F. Supp. at 1470.[6]

The same is true of his attempt to state a due process claim based on Defendant Ramer's alleged failure to advise him of his rights during alleged phone interrogations. Hernandez's apparent claim that Ramer's failure to advise him of his *Miranda* rights during these phone calls deprived him of constitutionally required procedural safeguards against self-incrimination arises, if at all, under the Fifth Amendment.  S*ee Chavez v. Martinez*, 538 U.S. 760, 770, (2003) ("In the Fifth Amendment context, we have created prophylactic rules designed to safeguard the core constitutional right protected by the Self–Incrimination Clause.").  Hernandez fails to allege any facts that would state a separate due process claim. The Court will dismiss the Fourteenth Amendment due process claims in Count One for failure to state a claim.

## B.    Count Three

In Count Three, Hernandez asserts Fourth and Fifth Amendment claims against Defendants Ramer and Thomas based on three separate grounds: (1)  unidentified officers

---

[6] Hernandez does not include any unlawful search allegations in Count One, but to the extent he attempts to assert any separate due process claims based on that incident, the same reasoning applies.  When addressing a plaintiff's § 1983 claim, courts must first "isolate the precise constitutional violation" under which the claim arises.  *Baker v. McCollan*, 443 U.S. 137, 140 (1979).  The Fourth Amendment protects the "right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV.

engaged in an "illegal search and seizure of [Hernandez's] residence by entering the curtilage of Plaintiffs [sic] residence, without a warrant", (2) Officers Ramer and Thomas "conspired and/or acted in concert to secure irrelevant charges against [Hernandez and] arrest him", and (3) officer Ramer interrogated him via phone about his whereabouts without advising him of his right to remain silent or right to an attorney.  (Doc. 31 ¶¶ 202, 207.)

### 1.    Fourth Amendment Claims

#### a.    Warrantless Search Claim

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures" absent a warrant supported by probable cause.  U.S. Const. amend. IV. "An entry into a residence that is not under a warrant, that lacks consent, and that is not justified by exigent circumstances or an emergency is unreasonable." *Mendez v. Cnty. of Los Angeles*, 897 F.3d 1067, 1075 (9th Cir. 2018).  Fourth Amendment protections extend to the curtilage of a house, which is the area around the house that the occupant may "reasonably expect" should be treated "as the home itself." *United States v. Dunn*, 480 U.S. 294, 300 (1987). A warrantless entry and search of a premises is permitted under the Fourth Amendment "when police obtain the voluntary consent of an occupant who shares, or is reasonably believed to share, authority over the area in common with a co-occupant who later objects to the use of evidence so obtained." *Georgia v. Randolph*, 547 U.S. 103, 106 (2006).

Hernandez's Fourth Amendment claim based on the warrantless search of his property by unidentified officers fails because his allegations are too vague and conclusory to state a claim against any named Defendant.  The only allegations that could potentially give rise to an unlawful search claim are that Defendant Ramer left a voicemail on Hernandez's phone saying he knew Hernandez was in the residence because "*they* questioned [Hernandez's] neighbor maintenance man, entered the certain curtilage around [Hernandez's] garage, opened the garage door to find [Hernandez's] car inside . . . and initially tried to open the interior door to [Hernandez's] home." (Doc. 31 ¶ 141 (emphasis

added).)   Hernandez does not allege that any named Defendants, including Defendants Ramer and Thomas, were even on the scene or participated in the alleged unlawful search of the property to show they were personally involved in any alleged violations.  *See Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."); *Barren*, 152 F.3d at 1194 ("A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights.").  And even with respect to the unidentified officers who were involved with the search, he fails to allege facts from which to infer that their actions were unreasonable under the circumstances.[7]

### b.   False arrest and malicious prosecution claims

Hernandez also fails to state Fourth Amendment claims for false arrest or malicious prosecution based on "Defendant Officers[']" alleged conspiracy "to secure irrelevant charges against him, arrest him, and cause him to be booked into jail and held in custody for 24 hours despite their knowledge that they lacked probable cause to do so."  (Doc. 31 ¶ 207.)  These allegations are too vague and conclusory to state a claim against any named defendant, and the blanket allegation that "Defendants" lacked probable cause to arrest, charge, or detain him is a legal conclusion unsupported by the facts alleged.  At the pleading stage, legal conclusions couched as factual allegations are not given a presumption of truth, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss."  *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

Furthermore, Hernandez also fails to state a claim because the allegations in the SAC, information contained in documents attached to or referenced in the SAC, and court records of which this Court takes judicial notice, collectively establish that the arrest and prosecution for violating a court order were supported by probable cause.[8]  *See Gasho v.*

---

[7] Because the Court finds that Hernandez has failed to allege facts sufficient to state an unlawful search claim against any named Defendant, it does not address the Individual Chandler Defendants' argument that the unnamed officers obtained consent from Mia Ingram to enter the home. (Doc. 65 at 9-10.)

[8] The Court may consider (i) the police report attached to the SAC, (ii) the OP referenced throughout the SAC, and (iii) records from both the Maricopa County Superior

1  *United States*, 39 F.3d 1420, 1427 (9th Cir. 1994) ("probable cause is an absolute defense

2  to a claim of false arrest and imprisonment"); *Lassiter v. City of Bremerton*, 556 F.3d 1049,

3  1054 (9th Cir. 2009) ("In order to prevail on a § 1983 claim of malicious prosecution, a

4  plaintiff 'must show that the defendants prosecuted [him] with malice and without probable

5  cause'" (quoting *Freeman v. City of Santa Ana*, 68 F.3d 1180, 1189 (9th Cir. 1995))).

6  "Probable cause exists when, under the totality of the circumstances known to the arresting

7  officers (or within the knowledge of the other officers at the scene), a prudent person would

8  believe the suspect had committed a crime." *Dubner v. City & County of San Francisco*,

9  266 F.3d 959, 966 (9th Cir. 2001) (citation omitted).

10  Based on the facts alleged in the SAC, Defendant Ramer personally served

11  Hernandez the OP, which required him to leave the property and gave his then-wife

12  exclusive access to the marital residence.  (SAC ¶¶ 57, 58.)  These allegations comport

13  with the information in Ramer's police report attached to the SAC.  (Doc. 31-2 at 5.)

14  Therein, Ramer stated he had "personally served Mario Hernandez with the [OP] and

15  advised him that he was not allowed to have contact with Mia and that she had exclusive

16  rights to the residence."  (*Id.*)  The report further stated that, prior to arriving on scene,

17  "dispatchers were able to confirm [the OP barring Hernandez from the property] was still

18  valid."  (*Id.*)  The OP issued in Chandler Municipal Court case No. 22-C-DV266 confirms

19  that Ms. Ingram exclusive control over the residence at issue:

20  **THE COURT FURTHER ORDERS:**

21  **[X] RESIDENCE.** Plaintiff is granted exclusive use and possession of the
     residence currently shared with Defendant.

22

23  * * * *

24  **PROTECTED LOCATIONS.**  Defendant shall not go to or near Plaintiff's
     or Protected Person's:

25

26  _____

27  Court case (No. LC2022-000360) and Chandler Municipal Court case (No. 22 -C-DV266)
     referenced in the SAC, without converting the motion to dismiss into a motion for summary
     judgment. *See Ritchie*, 342 F.3d at 907–08 (explaining that a court may consider "certain
28  materials—documents attached to the complaint, documents incorporated by reference in
     the complaint, or matters of judicial notice—without converting the motion to dismiss into
     a motion for summary judgment").

[X]  Residence (confidential)
[X]  Workplace (leave blank if confidential):
[X]  School/other:

(June 30, 2022 Order of Protection at 2.)  The OP further states that it would remain in full force and effect absent court action: "Nothing the plaintiff does can stop, change, or undo this order without the court's written approval.  You must appear in court to ask a judge to change (modify) or dismiss (quash) this order." (*Id.*)  Hernandez does not allege that any court action modified or eliminated the OP until January 4, 2023, when the Maricopa County Superior Court reversed the judgment of the Chandler Municipal Court.  More importantly, he does not allege that that any of the officers had reason to believe that the OP had been modified or quashed such that Hernandez would be allowed in the residence on September 10, 2022, when he was arrested.

Additionally, both the SAC and Ramer's police report confirm that the Chandler Police Department was aware that Hernandez was in the residence.  Hernandez alleges that he informed Ramer that he was "[r]esiding in his home minding his own business." (SAC ¶ 143.) And Ramer's report states that, prior to Hernandez's arrest on September 10, 2022, Chandler Police received a call in which the reporting party, Mia Ingram, stated she had gone to the residence and heard her husband, Mario Hernandez, in the garage. (*Id.*)

In light of these facts, a prudent officer in Ramer's or Thomas's position would have sufficient cause to believe Hernandez was violating a current court order.  *Dubner*, 266 F.3d at 966.  Because probable cause is an absolute defense to claims based on false arrest and malicious prosecution, Hernandez cannot state a Fourth Amendment claim based on these actions.

The Court will dismiss the Fourth Amendment claims in Count Three for failure to state a claim.

### 2.   Fifth Amendment

The Fifth Amendment provides that no person "shall be compelled in any criminal case to be a witness against himself."  U.S. Const. amend. V.  The right also applies to the use of out-of-court statements obtained by compulsion. *Vega v. Tekoh*, 597 U.S. 134, 141

- 13 -

(2022)  In *Miranda*, the Supreme Court set forth procedural safeguards it concluded were necessary to prevent compelled testimony.  *Id.*; *see Miranda v. Arizona*, 384 U.S. 436, 444 (1966).  Thus, it required that what are now commonly known as *Miranda* warnings be given prior to any custodial interrogations, and it further held that incriminating statements obtained without adequate procedural safeguards could not be used against a suspect in a criminal prosecution.  384 U.S. at 444.  A violation of *Miranda*, however, "is not itself a violation of the Fifth Amendment," and it does not "confer a right to sue under § 1983." *Vega*, 597 U.S. at 152.  Instead, *Miranda*'s procedural safeguards exist to protect "the [Fifth Amendment] right against compulsory self-incrimination."  *Michigan v. Tucker*, 417 U.S. 433, 444 (1974).  To maintain a § 1983 claim based on the violation of this right, an incriminating statement must be used against the plaintiff in a criminal prosecution. *Chavez v. Martinez*, 538 U.S. 760, 769 (2003) ("mere coercion does not violate the text of the Self–Incrimination Clause absent use of the compelled statements in a criminal case against the witness").

Hernandez's allegations that Defendant Ramer interrogated him over the phone without advising him of his *Miranda* rights fail to state a Fifth Amendment claim.  First, he does not allege he was in custody or that his freedom was otherwise restrained by police during Ramer's alleged phone interrogations, so *Miranda* does not apply.  *See Miranda*, 384 U.S. at 444 ("By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way").  Hernandez also does not allege that any statements he made to Ramer at the time were used against him in his criminal prosecution. The Court will dismiss the Fifth Amendment claim in Count Three for failure to state a claim.

### C.    Count Four

In Count Four, Hernandez asserts a Fifth Amendment claim against Defendant Officer Cohen based on Cohen's alleged interrogation of Hernandez over the phone without advising him of his right to remain silent and right to an attorney.  (Doc. 31 ¶ 227.)

This claim fails for the reasons already discussed regarding Hernandez's claim against Defendant Ramer.  Again, the facts alleged do not show Hernandez was in custody during the alleged interrogation.  Hernandez alleges only that Defendant Cohen contacted him by telephone, and he provides no facts about his whereabouts at the time or any other facts from which to infer his testimony was compelled.  He also fails to allege any facts showing he made any self-incriminating statements to Defendant Cohen or that any such statements were later used against him in a criminal prosecution.

In his Response, Hernandez argues that Cohen's alleged interrogation "led to charges being filed against Plaintiff and the matter being referred to the prosecutor's office, clearly indicating that Plaintiff's statements were used against him in a criminal context." (Doc. 72 at 11.)  But Hernandez does not point to any allegations in the SAC showing either that his statements were compelled or used against him.  Instead, he argues that the Court should consider the police report attached to the SAC because this report "indicates Defendant Cohen's actions and the subsequent referral of charges" and shows that "the interrogation had a significant impact on Plaintiff's legal standing."  (*Id.*)

Even if the Court could glean additional, relevant facts from the attached police report in support of his claim, this evidence does not help Hernandez because, under Rule 8 of the Federal Rules of Civil Procedure, he was required to set forth "simple, concise, and direct" allegations in the SAC and to provide "a short and plain statement of the claim." Fed. R. Civ. P. 8(a) & (d).  Absent any simple, direct allegations in the SAC showing he was compelled to make incriminating statements, and these statements were used against him in a criminal prosecution, he fails to state a Fifth Amendment claim.  The Court will dismiss Count Four for failure to state a claim.

### D.    Count Five

In Count Five, Hernandez asserts a Fourteenth Amendment failure to intervene claim against Defendant Officers Etringham, Hernandez, Trujillo, and Thomas based on their alleged failures to stop the alleged "robbery" of Hernandez's residence on September 3, 2022.  (Doc. 31 ¶¶ 251−252.)  He also alleges that Defendant Officer Hernandez failed

1    to properly follow up when he made only a single phone call to Defendant Ingram to

2    "inquire about the recovery of stolen property," even though bodycam video showed a

3    Penske moving truck on the scene.  (*Id.* ¶ 275.)

4         Hernandez fails to state a Fourteenth Amendment due process violation for several

5    reasons.  First, he does not allege sufficient facts to support a robbery or the theft of any

6    property from his residence.  To survive a motion to dismiss, a complaint must state a claim

7    that is "plausible on its face," meaning the plaintiff must plead sufficient facts to allow "the

8    court to draw the reasonable inference that the defendant is liable for the misconduct

9    alleged."  *Iqbal*, 556 U.S. at 678.  Hernandez does not allege any facts showing who

10   Defendant Antoinette Ingram was in relation to him or his then-wife Mia Ingram or why

11   Defendant Officers were present when Defendant Ingram allegedly robbed the residence.

12   Moreover, other alleged facts, such as that his children were present; Ingram spoke to the

13   officers about the OP, mentioned moving out of the residence, and "alluded to the absence

14   of electricity and the presence of an infant in the home"; and that Defendants Trujillo and

15   Hernandez stated verbally and in their police reports that the items taken were communal

16   property (Doc. 31 ¶¶ 259, 272), undercut any conclusion that this was a robbery or theft as

17   opposed to a police escort of a former resident to retrieve communal property.  Also, absent

18   any allegations that anyone called police to report a suspected crime, or any other facts

19   showing why Defendant Officers were there, it is implausible to infer the officers just

20   happened to observe that a robbery/theft was taking place at Hernandez's residence as

21   opposed to concluding they were there to oversee Ingram's removal of communal property

22   following Hernandez's departure from the residence, as ordered in the OP.  The Supreme

23   Court has instructed that "determining whether a complaint states a plausible claim for

24   relief" is a context-specific task that requires the reviewing court "to draw on its judicial

25   experience and common sense."  *Iqbal*, 556 U.S. at 663.  Thus, although a plaintiff's

26   specific factual allegations may be consistent with a constitutional claim, a court must

27   assess whether there are other "more likely explanations" for a defendant's conduct.  *Id.* at

28   681.

But even if it is plausible to infer on the facts alleged that Defendant Ingram stole a truckload of items from Hernandez's residence in the presence of Defendant Officers, and the officers did nothing to intervene at the time and very little to investigate after-the-fact, these facts fail to state a Fourteenth Amendment due process claim. The Due Process Clause provides that no State shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV. This provision "is phrased as a limitation on the State's power to act, not as a guarantee of certain minimal levels of safety and security." *DeShaney v. Winnebago Cnty. Dep't of Soc. Servs.*, 489 U.S. 189, 195 (1989) ("[N]othing in the language of the Due Process Clause itself requires the State to protect the life, liberty, and property of its citizens against invasion by private actors."); *see also Johnson v. City of Seattle*, 474 F.3d 634, 639 (9th Cir. 2007) ("Because the City of Seattle had no constitutional duty to protect the Pioneer Square Plaintiffs against violence from members of the riotous crowd, 'its failure to do so—though calamitous in hindsight—simply does not constitute a violation of the Due Process Clause'" (quoting *DeShaney*, 489 U.S. at 195)). Similarly, the Due Process Clause does not confer a right to a thorough investigation of third-party harm. *Gomez v. Whitney*, 757 F.2d 1005, 1006 (9th Cir. 1985) ("[W]e can find no instance where the courts have recognized inadequate investigation as sufficient to state a civil rights claim unless there was another recognized constitutional right involved.").

Hernandez's claim based on Defendant Officers alleged failures to intervene in and/or investigate the alleged "robbery" of his residence, even if plausible under the facts alleged, fails to state a Fourteenth Amendment due process claim under § 1983, and the Court will dismiss this claim.

### E. Count Seven: Negligent Infliction of Emotional Distress (NEID)

In Count Seven, Hernandez asserts a § 1983 claim for negligent infliction of emotional distress ("NIED") against all Defendants for allegedly engaging in a pattern of conduct they knew or should have known would cause him severe emotional distress. He alleges that "Defendants," as a whole, "engaged in a pattern and practice of conduct that

they knew or should have known would cause severe emotional distress" and that "Defendants," as a group, "conspire[ed] to undermine the legal process and deny Plaintiff due process rights," and "engag[ed] in a pro-women agenda aimed at destroying the role of men in families and communities."  (SAC ¶¶ 304, 312, 313.)

Hernandez does not identify a specific constitutional violation underlying his NIED claim.  Liberally construed, this claim arises, if at all, from the alleged constitutional violations of unspecified "Defendants" in the previous Counts, which the Court has already discussed and dismissed.

Hernandez's only additional allegations that he attributes to a specific named Defendant are that, on July 19, 2023, when he and the Chandler Attorney's Office were discussing possible settlement, Defendant Chandler Deputy Attorney Rosales "inadvertently mention[ed] that they may consider hiring an investigator to look into Plaintiff's background." (Doc. 31 ¶ 317.)  Hernandez does not allege any other facts about this incident from which to infer that this suggestion violated his federal or constitutional rights; nor does he allege sufficient facts about Rosales' role in the settlement discussions from which to infer Rosales was acting under color of state law for purposes of § 1983. Generally, "[s]ervices performed by an attorney in connection with a lawsuit do not constitute action under color of state law." *Sinclair v. Spatocco*, 452 F.2d 1213, 1213 (9th Cir. 1971).  The Court will dismiss the NIED claims in Count Seven for failure to state a claim.

**V.    Unserved Defendants**

Hernandez's sole remaining claims are his § 1983 claims against Defendant Antoinette Ingram and the Doe Defendants, who are sued only as the spouses of the named Defendants.  Because the Court will dismiss all claims against the named Defendants, and the claims against their spouses are entirely derivative of those claims, the Court will likewise dismiss the claims against the Doe Defendants for failure to state a claim.

The Court will also sua sponte dismiss the § 1983 claim against Defendant Ingram in Count Six because, as discussed more fully below, Ingram is not a state actor, and

Hernandez fails to state a § 1983 claim against her.  *See Baker v. Dir., U.S. Parole Comm'n*, 916 F.2d 725, 727 (D.C. Cir. 1990) ("Because it is patently obvious that Baker could not have prevailed on the facts alleged in his complaint, we find that *sua sponte* dismissal was appropriate.").

To state a § 1983 claim, Hernandez must allege facts showing he was deprived of a federal or constitutional right *and* that "the alleged deprivation was committed by a person acting under color of state law."  *West v. Atkins*, 487 U.S. 42, 48 (1988).  "[T]he under-color-of-state-law element of § 1983 excludes from its reach 'merely private conduct, no matter how discriminatory or wrongful.'"  *American Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (quoting *Blum v. Yaretsky*, 457 U.S. 991, 1002 (1982)).

Hernandez admits in the SAC that Defendant Ingram is not a state actor.  (Doc. 31 ¶ 55.)  Hernandez therefore cannot state a § 1983 claim against Ingram unless he also alleges facts showing she engaged in joint action with state officials.  *See Collins v. Womancare*, 878 F.2d 1145, 1154 (9th Cir. 1989) (private parties who are jointly engaged with state officials in the challenged action are acting under color of state law).

In Count Six, Hernandez asserts a § 1983 claim for defamation.  Throughout this count, he only generally alleges that false statements were made against him at various court hearings; he does not identify what was said that was allegedly false or attribute any specific statements to Defendant Ingram.  (*See* Doc. 31 ¶¶ 284−296.)  His allegations are therefore too conclusory to state a claim.  Additionally, the Court already dismissed his claim against the City in this Count for failure to state a claim, finding that, to the extent defamation is cognizable under the Fourteenth Amendment as a deprivation of liberty, public disclosure is a necessary element of the claim, and he "d[id] not allege that any government actors publicly disclosed any false and defamatory statements."  (Doc. 61 at 14.)  Based on this finding, even if Hernandez could show Ingram jointly participated in official state action in a substantive way, his failure to state a claim against any state actors is fatal to his defamation claim against Ingram.  Because it is obvious Hernandez fails to state a claim against Ingram, the Court will sua sponte dismiss this claim for failure to state

1    a claim.

2    **VI.    Motion for Leave to Amend**

3    Pending before this Court is Hernandez's Motion for Leave to File Third Amended

4    Complaint in which he seeks to assert additional claims against all named and Doe

5    defendants and reassert his state law claims against those defendants.  (Doc. 86.)[9]  The

6    State filed an opposition arguing that allowing Hernandez to assert claims against it would

7    be futile given that nothing has changed since the Court's June 4, 2024 dismissal of all

8    claims against the State.  (Doc. 87.)  Similarly, the Municipal Defendants opposed the

9    motion on the grounds that amendment would be futile, and that Hernandez filed the

10   motion in bad faith.  (Doc. 88.)

11   Under Rule 15, a court "should freely give leave [to amend] when justice so

12   requires." Fed. R. Civ. P. 15(a)(2).  "Leave to amend need not be given if a complaint, as

13   amended, is subject to dismissal." *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531,

14   538 (9th Cir. 1989).

15   In this case, justice favors granting Hernandez's motion in part.  The Court finds

16   that it would be unfair to deny Hernandez leave to reassert his state law claims given that

17   he did not include them in the SAC due to the Court's orders declining to exercise

18   supplemental jurisdiction over those claims, and given that the Court invited him to seek

19   leave to amend for this very purpose.  Because Hernandez may reassert his state law claims,

20   the Court will allow him to assert the new causes of action set forth in his Proposed Third

21   Amended Complaint and reassert claims dismissed in this order and prior orders, but only

22   to the extent he alleges facts that remedy the defects in pleading identified by the Court.

23   To ensure that Hernandez complies with this limitation, the Court will review all federal

24   claims asserted in a third amended complaint for sufficiency sua sponte.  Defendants are

25

26   _____

27   [9] Hernandez failed to comply with LRCiv 15.1(a) because he did not attach a copy
     of the Proposed Third Amended Complaint to the motion in a format that shows how it
     differs from the SAC.  (Doc. 86-1.)  It is apparent, however, that the Proposed Third
28   Amended Complaint would allege new facts in support of Hernandez's § 1983 claims and
     would reassert the eight state law causes of action identified (but not asserted) in the SAC.
     (*Id.*)  For purposes of judicial economy, the Court will consider the motion.

not required to file a response to the federal claims unless ordered by the Court.  Defendants shall, however, respond to the state law claims 15 days after the filing of a third amended complaint.

Hernandez must file any third amended complaint within 30 days, and must clearly designate on the face of the document that it is the "Third Amended Complaint."  The third amended complaint must be restated in its entirety and may not incorporate any part of the original Complaint, the First Amended Complaint, or the Second Amended Complaint by reference, because an amended complaint supersedes any prior complaints.  *Ferdik v. Bonzelet*, 963 F.2d 1258, 1262 (9th Cir. 1992); *Hal Roach Studios v. Richard Feiner & Co.*, 896 F.2d 1542, 1546 (9th Cir. 1990).  After amendment, the Court will treat the original Complaint, First Amended Complaint, and Second Amended Complaint as nonexistent.  *Ferdik*, 963 F.2d at 1262.  Any cause of action that was raised in the original Complaint or First Amended Complaint and that was voluntarily dismissed or was dismissed without prejudice is waived if it is not alleged in the third amended complaint. *Lacey v. Maricopa County*, 693 F.3d 896, 928 (9th Cir. 2012) (en banc).

Absent extraordinary circumstances**,** this is Hernandez's final opportunity to amend his complaint given his failure to state a claim in his three previous attempts. *See Sisseton-Wahpeton Sioux Tribe v. United States*, 90 F.3d 351, 355 (9th Cir. 1996) (holding that a court's discretion to deny leave to amend is particularly broad where a plaintiff has previously been permitted to amend his complaint).

**IT IS ORDERED:**

(1)    The reference to the Magistrate Judge is **withdrawn** as to the Individual Chandler Defendants' Motion to Dismiss (Doc. 65) and Hernandez's Motion to Amend (Doc. 86).

(2)    The Individual Chandler Defendants' Motion to Dismiss (Doc. 65) is **granted**, and Hernandez's claims against these Defendants are **dismissed** without prejudice for failure to state a claim.

(3)    The remaining § 1983 claims against Defendant Ingram and the Doe Defendants, are **dismissed** without prejudice for failure to state a claim.

(4)    Hernandez's Motion to Amend (Doc. 86) is **granted in part**, and he shall file any third amended complaint within **30 days** of this order.  Hernandez may reassert his state law claims in the Third Amended Complaint. He may also assert any new claims identified in the Proposed Third Amended Complaint (Doc 86-1) and reassert any dismissed claims, but only to extent he alleges facts that remedy the defects in pleading identified in the Court's orders.

(5)    Within **15 days** of the filing of a third amended complaint, Defendants shall respond solely to Hernandez's reasserted state law claims.

(6)    Defendants are not required to respond to any federal claims asserted in a third amended complaint unless so ordered by the Court.

Dated this 23rd day of April, 2025.


_____
Honorable Sharad H. Desai
United States District Judge